FILED

2024 Mar-12  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| ALICE UPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01120-SGC |
| | ) | |
| COMMISSIONER, SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Alice Upton, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"), Disabled Widow's Benefits ("DWB"), and Supplemental Security Income ("SSI"). (Doc. 1).[2] Upton timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

# I. Background

## A. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the Step 2 impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P,

Appendix 1. If so, the claimant is disabled and the claim is granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and then proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b), 416.920(a), 416.920(b) (Step 1); 20 C.F.R. §§ 404.1520(c), 416.920(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. §§ 404.1520(e-f), 416.920(e-f) (Step 4); 20 C.F.R. §§ 404.1520(g), 416.920(g) (Step 5).

To establish eligibility for DWB, a claimant must meet the requirements of 42 U.S.C. § 402(e), including that: (1) she is at least 60 years of age or is at least 50 and has a disability as defined at 42 U.S.C. § 423(d); (2) she is the widow of a wage earner who died fully insured; and (3) she is not married. *Taylor-Tillotson v. Comm'r of Soc. Sec.*, 696 F. App'x 972, 974 (11th Cir. 2017) (citing 42 U.S.C. § 402(e); *see also* 20 C.F.R. § 404.335(a), (c)).

## B. Upton's Alleged Disability and Medical Evidence

Upton was 54 years old when she applied for benefits in 2019. (Tr. at 31). She has a GED and has past relevant work as an accounts receivable/payable clerk,

administrative assistant, assistant manager, training employee and customer service employee. (*Id.* at 31, 291). In 2019, she stopped working after suffering increased pain in her back and leg. (*Id.* at 45). Upton applied for benefits in May 2020, claiming she became disabled on June 26, 2019. (*Id.* at 272-73). Relevant to the issues in this appeal, the following medical evidence was submitted:

In February 2017, Upton presented to an emergency room complaining of a sudden onset of back pain, shaking, nausea, and chest pain with shortness of breath after moving large boxes about three hours earlier at work. (*Id.* at 465). Her intermittent back pain, which was both sharp and dull, radiated down both her legs and buttocks. (*Id.*). She had local muscle spasms and tenderness over the lumbosacral region, and twisting at the axial spine and bending at the back were painful. (*Id.* at 466). Upton walked with difficulty because of the back pain. (*Id.*). She was given Zofran, Norflex, Toradol, and Rocephin. (*Id.* at 467). A CT scan showed anatomic alignment and no convincing evidence for significant osteoarthritis, but mild multilevel degenerative disc disease could not be excluded. (*Id.* at 470). She was discharged with a prescription for oral promethazine and oral ciprofloxacin. (*Id.* at 471).

In December 2020, Upton was seen by Nurse Practitioner Haley White. (*Id.* at 514). Upton reported 3-4 weeks of low back pain that started while vacuuming and worsened with prolonged standing and walking. (*Id.* at 517). She had no

cramps, fractures, or difficulty walking. (*Id.*). White noted that Upton ambulated normally and had normal movement in all extremities but had palpable tenderness in her left sacroiliac ("SI") joint. (*Id.* at 517-18). An x-ray showed mild degenerative changes in the lumbar spine at L5. (*Id.* at 518). White administered an in-office celestone injection and prescribed 5 days of prednisone and 10 days of meloxicam and baclofen, as well as stretching exercises and heat application. (*Id.*). Upton was instructed to avoid heavy lifting/pushing/pulling and to notify the clinic if she did not improve over the following week. (*Id.*). There is no indication Upton followed up with any medical provider for this issue.

In June and July 2021, Upton visited Hancock Chiropractic several times. (*Id.* at 522-28). She reported dull, sharp, aching, burning, shooting, and tingling discomfort to her left and right lumbar, as well as her left, mid, and right thoracic. (*Id.*). At its worst, her pain level was a 9/10. (*Id.*). The notes reflect that Upton's lumbar spine motion was severely reduced; however, they also show that following the first visit, Upton showed improvement and met expectations. (*Id.*).

When consultive examiner Dr. Dallas Russell examined Upton in September 2020, Upton reported lower back pain over several years that had worsened during the prior 18 months. (*Id.* at 507). She had full range of motion in her back with tenderness of the lower spine and both SI joints. (*Id.* at 509). Her fine motor skills, handling, fingering, and gripping were all normal. (*Id.* at 510*)*. In Dr. Russell's

opinion, Upton would be sensitive to environmental exposures such as heat, cold, humidity, noise, and vibration. (*Id.*). She would have difficulty carrying, lifting, pushing, pulling, sitting, standing, walking, climbing, stooping, bending, crawling, kneeling, and crouching. (*Id.*).

State agency physician Dr. Robert Haas reviewed Upton's records in October 2020. (*Id.* at 114). He opined that while Upton had an impairment that could reasonably be assumed to cause the limitations she reported, the severity of those limitations was not wholly consisted with the medical evidence on file. (*Id.*). Dr. Haas opined that Upton could sit and stand for six hours in an eight-hour workday, with normal breaks. (*Id.* at 115). She could occasionally lift or carry up to 50 pounds and frequently lift or carry up to 25 pounds. (*Id.*). She should avoid all exposure to unprotected heights and concentrated exposure to cold but otherwise had no environmental limitations. (*Id.* at 116). Dr. Haas diagnosed chronic low back pain, bilateral SI joint difficulties, bilateral knee difficulties, gout that involves the big toes, peripheral neuropathy, right carpal tunnel syndrome, mitral valve prolapse, mitral valve insufficiency, left ankle difficulties, osteoarthritis of the fingers, orthostatic hypotension, palpitations, migraines, right shoulder discomfort and insomnia. (*Id.*).

State agency physician Dr. Gregory Parker reviewed Upton's records in May 2021. (*Id.* at 69). Like Dr. Haas, Dr. Parker opined that the severity of Upton's

alleged limitations was not wholly consistent with the medical evidence in the file. (*Id.* at 70). According to Dr. Parker, Upton could sit and stand for six hours in an eight-hour workday, with normal breaks. (*Id.* at 71-72). She could occasionally lift or carry up to 50 pounds and frequently lift or carry up to 25 pounds. (*Id.* at 72). She could occasionally climb ladders, ropes, and scaffolds; could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; and had no limitation on balancing. (*Id.*). She should avoid all exposure to unprotected heights, concentrated exposure to cold, and even moderate exposure to hazards such as machinery; otherwise, she had no environmental limitations. (*Id.* at 73).

Upton's application for benefits was denied, and she requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 145, 185). At the January 2022 hearing, Upton testified she could not work because standing and sitting caused pain in her leg and back. (*Id.* at 48). She also testified to gout flareups in her big toe and ankle and dizziness from a "leaking valve." (*Id.* at 49-50). She further testified that she lived alone, drove herself, and performed housework for 15-30 minutes before needing a break.[3] (*Id.* at 51). She takes no prescription medication, but she sees a chiropractor. (*Id.* at 52).

---

[3] In a function report dated January 2021, Upton stated she cares for a small dog, prepares her own meals, performs her own housework, and shops in stores. (Tr. at 364-70).

7

## C. The ALJ's Decision

Following the hearing, the ALJ denied Upton's claim. (*Id.* at 22-41). He first found Upton met the SSA's insured requirements through September 30, 2023, and did not engage in substantial gainful activity after the alleged onset date of June 26, 2019. (*Id.* at 28). At the second step, the ALJ determined Upton had the following severe impairments: orthostatic hypertension and lumbar degenerative disc disease ("DDD") with radiculopathy. (*Id.* at 28).

The ALJ found Upton had several impairments that were not "medically determinable," including restless leg syndrome, gout, hypothyroidism, severe migraine headaches, mitral valve prolapse, bilateral SI joint difficulties, bilateral knee problems, peripheral neuropathy, right carpal tunnel syndrome, mitral valve insufficiency, left ankle difficulties, osteoarthritis of the fingers, orthostatic hypotension, palpitations, right shoulder discomfort, and insomnia. (*Id.*). Most of these impairments were not medically determinable because the treatment records did not establish any formal diagnoses or medical treatment; instead, these impairments were based solely on Upton's self-reporting. (*Id.*). The ALJ also concluded that Upton's reported migraines were not medically determinable because her health providers' assessments did not comply with the precise requirements of Social Security Ruling 19-4p. (*Id.* at 29).

At the third step, the ALJ determined Upton's impairments did not meet or medically equal the severity of one of the Listings. (*Id.* at 29-30). Before proceeding to the fourth step, the ALJ found Upton's impairments could reasonably be expected to cause her alleged symptoms but her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the objective medical evidence, treatment regimen and response to treatment, and Upton's daily activities. (*Id.* at 32). The ALJ determined Upton had the following RFC:

> [Upton can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she can] frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She [can] frequently stoop, kneel, crouch, and crawl. She should avoid exposure to extreme cold, hazardous or moving machinery, commercial driving, and unprotected heights.

(*Id.* at 31). The ALJ first noted that "no treating, examining, or reviewing doctor ha[d] indicated that the claimant was disabled or otherwise unable to perform work related activities." (*Id.* at 32). He also observed that the medical evidence demonstrated her symptoms were well-controlled with conservative treatments of prescription mediation and intermittent chiropractic care. (*Id.* at 35). Consequently, Upton's treatment history did not support a finding that her condition was as severe as alleged. (*Id.* at 35).

The ALJ found Dr. Russell's opinion to be somewhat persuasive because the limits imposed by Dr. Russell were partly based on Upton's self-reporting rather

than his examination results. (*Id.* at 34). Nevertheless, the ALJ reduced Upton's RFC to a range of light work. The ALJ found somewhat persuasive the opinions of Dr. Parker and Dr. Haas given their examinations and the chiropractic records, but because of updated evidence at the hearing level, the ALJ limited Upton to a reduced range of light work. (*Id.*).

At the fourth step, the ALJ found Upton could perform some of her past relevant work as an accounts payable clerk because it did not require her to perform work activity precluded by her RFC. (*Id.* at 35). Because she could perform past relevant work, the ALJ concluded Upton was not disabled. (*Id.* at 36).

The Appeals Council denied review of the ALJ's decision (*Id.* at 1-6), which became the final decision of the Commissioner. *See Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Upton filed this action. (Doc. 1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings

of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Analysis

Upton brings only one challenge to the ALJ's decision: whether he properly evaluated Upton's complaints of pain consistent with the Eleventh Circuit's standard. (Doc. 10 at 7). Upton contends the ALJ improperly discounted her subjective complaints and failed to consider the complete medical record. In response, the Commissioner argues the ALJ's determination was supported by substantial evidence.

Standing alone, Upton's subjective complaints of pain are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.

1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225−26. To discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)*. "The question is not . . . whether [the] ALJ could have reasonably credited [Upton's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548−49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard.

Here, the ALJ reviewed the complete medical record to support his conclusion, and substantial evidence supports his decision. The ALJ determined Upton had an underlying medical condition but the objective medical evidence was inconsistent with the severity of her reports of disabling pain. Despite Upton's claims of severe pain, she sought limited care, physicians continually recommended conservative treatment with medication and chiropractic care, and no physician recommended surgical intervention. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting a history of conservative treatment can be a factor in evaluating a claimant's testimony); *Hantzis v. Colvin*, No. 8:13-CV-1711-T-17MAP, 2014 WL 12693222, at *3 (M.D. Fla. July 22, 2014), *aff'd sub nom. Hantzis v. Comm'r of Soc. Sec.*, 686 F. App'x 634 (11th Cir. 2017) ("In general, conservative treatment for back pain includes any treatment option that does not

involve surgery."); 20 C.F.R. §§ 404.1529(c)(3)(v), (vi), 416.929(c)(3)(v), (vi) (noting that a claimant's treatment and measures used to relieve pain can be considered). Additionally, the ALJ emphasized that despite Upton's allegations of disabling pain, no treating, examining, or reviewing physician opined Upton was unable to perform work activities.

Upton argues that her chiropractic examinations showed range of motion in her lumbar spine was severely reduced. While Upton visited her chiropractor six times between June 28, 2021, and July 23, 2021, at each follow-up visit the chiropractor noted Upton showed improvement. (Tr. at 522-26). Further, the record contains no indication that Upton sought additional chiropractic care for this issue after July 2021.

While the record demonstrates Upton complained of lower back pain and a reduced range of motion, other evidence demonstrates she could walk, drive and ride in the car, care for her dog, and shop alone in stores, and she was independent in her personal care and daily living activities. (*Id.* at 51, 364-70). In addition, no medical opinion of record supported a conclusion that Upton was unable to work.

The question here is not whether the ALJ could have reasonably credited Upton's testimony but whether he was clearly wrong to discredit it. *Werner*, 421 F. App'x at 939. He was not. Instead, he articulated in detail his findings that Upton's subjective complaints were inconsistent with the medical evidence of record, and

substantial evidence supports his determination that Upton's pain was not disabling as she claimed.

## IV. Conclusion

Upon review of the administrative record and considering all of Upton's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 12th day of March, 2024.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE